[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above-captioned action came before this court on January 17, 1997 for trial on the merits. In its complaint, the plaintiff insurance agency ("agency") seeks to recover a balance claimed to be due for insurance premiums that the agency advanced to insurance carriers for coverage between May 1, 1991 and May 1, 1992. The defendant denied that any balance was due and CT Page 391-FF counterclaimed alleging 1) that the agency had fraudulently misrepresented that it had obtained the coverage at the best available price; 2) that the agency was negligent in auditing the coverage for the period; and 3) that the agency violated the Connecticut Unfair Insurance Practices Act in its billing practices.
After assessing the credibility of the witnesses, the court finds the facts to be as follows. For the period starting September 1, 1990 the agency assisted the defendant in obtaining insurance coverage from the CNA Insurance Companies for commercial auto, worker's compensation and general commercial liability (known as "package"). The initial policy period was September 1, 1990 to May 1, 1991. For that period, the defendant was charged estimated premiums that were subject to increase or decrease by CNA at the end of the policy term based on an audit of payroll. The agency paid the stated estimated premiums to CNA and in turn received payment from the defendant. At the end of the September 1990 to May 1991 policy term, CNA's subsidiary, Transcontinental Insurance, charged the defendant additional premiums after an audit as to the worker's compensation and "package" coverage. That audit was performed after May 1, 1991 on a date not put in evidence. The agency paid CNA the amount of the additional premium charged after the audit and billed the defendant for that amount. CT Page 391-GG
For the renewal period, May 1, 1991 to May 1, 1992, CNA quoted estimated premiums for the three policies of $77,640 (worker's compensation); $31,229 ("package"); and $29,620 (commercial auto), for a total estimated premium of $138,489. The declaration sheets indicate that the premiums were to be paid in installments. The defendant did not cancel the coverage but accepted it. The court finds that the parties agreed to policy terms that provided that the estimated premiums could be adjusted up or down based on an audit at the end of the period.
The defendant made payments to the agency on June 5, 1991 and June 28, 1991 and paid further amounts in August 1991. The agency did not produce any documents showing that actual amount of each charge billed and amount paid, however its controller testified that it applied the payments received in June 1991 to the adjusted premium due on the audit for the September 1, 1990-May 1, 1991 policy period.
The president of the defendant, Fred Criscuolo, testified that the defendant had not designated the June payments to be applied to the renewal period rather than the audit premium for the prior period of insurance. The court finds that the defendant never challenged the results or accuracy of the audit that followed the September-May 1991 policy period and does not CT Page 391-HH believe Mr. Criscuolo's claim that he questioned a former employee of the agency about the amount. The court does not find it credible that the defendant had disputed the May 1991 audit since it renewed its coverage with the same agency and insurers, sent no document about the audit to either the agency or the insurer, and did not instruct the agency that its June payments were not to be applied to the audit premium.
The defendant did not pay each installment for the 1991-1992 period in the amount billed but sent the agency checks from time to time. The plaintiff agency has not presented this court with its billing records for May 1, 1991 to December 5, 1991. Between December 6, 1991 and January 1, 1992, the plaintiff billed the defendant $26,229 for installments due as to the three coverages and an additional endorsement. The defendant paid $11,275 in five payments it made between April 1992 and June 1993, leaving a balance due of $14,954 for the May 1, 1991-May 1, 1992 period.
While the defendant claims to have paid the 1991-1992 premium in full, it did not present evidence of any payment for which the agency did not give it credit. Instead, the defendant's claim is that if its payments had not been applied to the outstanding premium amount for the 1990-91 audit, its payments equalled the 1991-1992 premiums.
At the end of the May 1, 1991 to May 1, 1992 period, CNA CT Page 391-II again performed an audit and claimed that additional premiums were due. The defendant refused to pay the claimed additional premium of $6,596. Because that premium was disputed, the agency did not pay it on the defendant's behalf but referred it back to CNA, which sued the defendant for the amount claimed. The defendant settled that lawsuit by paying $3,000. The agency, which had advanced the estimated premiums for the same period on behalf of the defendant, was not a party to that suit. The court finds that by settling this suit concerning the proper calculation of premiums for the 1991-1992 period, the defendant waived its right to contest CNA's calculation of those premiums.
The defendant now claims that both the audit and the estimated premium were incorrect and erroneously calculated. While the defendant presented evidence to the effect that it had not been provided with full documentation of the calculations and classifications at issue; the plaintiff did not establish that these were in error. In particular, the defendant disputes the classification given to particular employees. It has not presented any evidence that its employees did not in fact meet the criteria for such classification, nor what those criteria were.
This court finds that the defendant agreed to accept coverage as rated by CNA and billed through the plaintiff. If it claimed CT Page 391-JJ that it should have been issued credits in the 1992 audit, it should have raised that claim with the party that conducted the audit, that is, the CNA companies. The defendant has not disputed that it agreed to pay Mathog Moniello, Inc. the amount of the estimated premium for the year, and the evidence establishes that the defendant has not made the agreed payments.
The defendant claims that it is not obligated to pay the estimated premium because the premium was not accurately figured. While the defendant presented a witness who testified that he "had questions" about the ratings used, the defendant did not adduce proof that the agreed premium was in fact erroneously calculated.
The defendant has claimed in its special defenses that the charges it agreed to were the product of either fraudulent or negligent misrepresentation. It has presented no evidence to prove that claim. While one of its witnesses discussed the rating categories used, the record is silent as to whether the defendant did or did not employ persons properly assigned to the classifications in question at the relevant time.
The defendant has filed a counterclaim alleging in Counts One and Two that the plaintiff breached a duty to provide it with coverage on the best rates obtainable. The defendant has failed CT Page 391-KK to prove that better rates were in fact obtainable from other carriers or that the rates charged were erroneous as applied to its work force.
The defendant withdrew the third count of its counterclaim, which alleged violation of the Connecticut Unfair Trade Practices Act.
In the final count of the counterclaim, the defendant alleges that "the billing practices of the plaintiff are unfair and deceptive acts or practices in the business of insurance" and violative of the Connecticut Unfair Insurance Practices Act, Conn. Gen. Stat. § 38a-815 et seq. ("CUIPA.") To the extent that this claim relates to the ratings of its various risks for the period at issue, the defendant has failed to establish that the ratings were inaccurate, as it has not presented evidence of the number of covered employees it employed and their work assignment to show that the calculations were in fact erroneous.
To the extent that the "billing practices" referred to are the practice of the plaintiff in applying payments first to outstanding balances for a prior period, the defendant has identified no provision of C.G.S. § 38a-815 that defines such a practice as an "unfair practice." CUIPA explicitly provides at § 38a-816 (a) that readjustment at the end of an insurance CT Page 391-LL period of the rate of premium for a group insurance policy based on loss or expense experience shall not constitute discrimination or rebating.
To the extent that the CUIPA practice alleged is the claimed quotation of premiums based on erroneous classification or ratings, the defendant has failed to prove that the ratings and classifications were in fact erroneous, as it presented no evidence to establish that its employees did not fall into the rating classifications used in the calculation of the estimated premium that the defendant agreed to pay.
CONCLUSION
Judgment shall enter in favor of the plaintiff against the defendant in the amount of $14,954 plus interest at the rate of ten percent per year pursuant to § 37-3a C.G.S. commencing on July 30, 1992, that is, as of the date below, $6,727.
Judgment shall enter in favor of the plaintiff as to the counterclaims of the defendant.
The plaintiff may recover its court costs upon application to the clerk. CT Page 391-MM
Beverly J. Hodgson Judge of the Superior Court